Southern Trading Co., Inc. v. Commissioner.
Southern Trading Co. v. Commissioner
Docket No. 46125.
United States Tax Court
T.C. Memo 1956-246; 1956 Tax Ct. Memo LEXIS 45; 15 T.C.M. (CCH) 1259; T.C.M. (RIA) 56246; 6 Oil & Gas Rep. 949; November 9, 1956
*45 Losses: Capital loss v. ordinary loss: Sale of corporate stock. - Although the corporate taxpayer was authorized to deal in securities, at no time did it appear that it was a dealer in stocks and securities. Thus, a loss on the sale of corporate stock was held to be a capital loss. Losses: Abandonment of oil lease. - The corporate taxpayer was not allowed to deduct a loss as a loss resulting from abandonment of an oil lease when it was unable to present sufficient proof that any part of the cost of the lease was unrecovered in the year of abandonment. Personal holding company: Oil and gas royalties. Business expenses over 15 per cent of gross income. - Although more than 80 per cent of the company's gross income was derived from oil and gas royalties, the court held that it was not a personal holding company since more than 15 per cent of its gross income was paid as compensation for services rendered by a person other than a shareholder. A shareholder was defined as a real or actual owner of stock in the corporation and not merely a nominee. Business expenses: Expenditure for geological survey. - Taxpayer, a corporation, paid a geologist to make a survey and give recommendations *46 in regard to certain properties in which taxpayer was considering the purchase of oil royalty interests. In the same year, on the geologist's recommendations, the taxpayer abandoned the idea of purchasing the interests. As a result, the taxpayer was allowed the deduction as a business expense and was not required to capitalize the expenditure. E. Charles Eichenbaum, Esq., Boyle Building, Little Rock, Ark., and W. S. Miller, Jr., *47 Esq., for the petitioner. Wayne West, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency of $1,418.44 in income tax against petitioner for 1946. He also determined deficiencies in personal holding company surtax and additions thereto for failure to file personal holding company returns for the years 1943 through 1949 as follows: Addition
Year
Deficiency
to Tax
1943
$1,903.89
$ 475.97
1944
3,110.61
777.65
1945
5,069.13
1,267.28
1946
5,052.58
1,263.15
1947
5,733.49
1,433.37
1948
5,417.92
1,354.48
1949
5,212.08
The questions for decision are (1) whether petitioner was a personal holding company within the meaning of section 501(a)(1) and (2) and section 502(h)(1) and (2) of the Internal Revenue Code of 1939, (2) whether $2,600 paid to a geologist in 1946 is an allowable deduction for that year, (3) whether a loss of $3,881.83 from the sale in 1946 of certain corporate stock was an ordinary loss or a capital loss, and (4) whether petitioner is entitled to a deduction of $587.03 by reason of the abandonment of an oil lease in 1947. On brief, the *48 respondent concedes that he erred in his determination of additions to personal holding company surtax for failure to file personal holding company returns for the years 1943 to 1948, inclusive. Findings of Fact Petitioner, an Arkansas corporation, was organized in 1936. Its business throughout its existence has been that of acquiring oil and gas royalty interests in producing and non-producing properties. It does not operate oil and gas properties itself. Although presently located in Paragould, Arkansas, petitioner's principal office was originally in Jonesboro, Arkansas, and continued there up through the taxable years herein. It filed its income tax returns with the collector of internal revenue for the district of Arkansas. The organization of petitioner was handled by Arthur L. Adams, an attorney in Jonesboro. He became its president and continued as such until his death in 1948. Its stock book and minute book were kept in his office. Its books of account were maintained by an accountant by the name of Bledsoe, and were kept at his office in Tulsa, Oklahoma. Petitioner's authorized capital stock consisted of 100 shares without par value, of which 75 shares were issued *49 at or shortly after organization. Two shares were issued to Adams, one share to Ed Blieden and one share to Louise Wells. The remaining 71 shares of issued stock were issued to and owned by C. W. Mack of Paragould. Winston T. Smith is a resident of Paragould. He is a graduate of Washington and Jeffereson College in Pennsylvania, and since his graduation, a period of approximately 40 years at the time of the trial herein, has engaged in drillingoil wells, blocking out acreage, and looking after interests in oil and gas properties for himself and his associates. On some undisclosed date, petitioner acquired royalty interests in five oil producing properties in Kansas. By the middle of 1940, the production from these properties had been reduced to what has been termed "stripper" production and there was practically no profit to petitioner therefrom. On July 19, 1940, petitioner, as party of the first part, and Smith, as party of the second part, entered into a contract whereby Smith agreed to undertake to procure "secondary" production from the properties. It was agreed that "any and all expenses incurred" by Smith "in attempting to bring about said secondary production" would be *50 borne by him but in the event such production was obtained, he was to receive for his services 50 per cent of the profits from the oil and gas produced on the said tracts over and above $400 per month. E. B. Koen was Smith's brother-in-law, and lived in West Virginia. Through some working or financing arrangement with one or more gas producing companies, Koen made a business of acquiring the oil interests where oil production resulted from the gas company drilling operations. Smith had told Koen about petitioner and in his talks there had been some discussion of the acquisition of petitioner by Koen. Thereafter, on August 16, 1940, Koen acquired all or substantially all of petitioner's outstanding stock. Adams continued to hold the two shares originally issued to him. The share held by Ed Blieden had been transferred on July 19, 1940, to Theodore A. Hebert, and on August 16, 1940, the share held by Louise Wells was transferred to Earl C. Moore. Hebert and Moore were residents of Kansas and the said shares were issued to them to satisfy the requirements of Kansas law relating to petitioner's operations in that state. Also on August 16, 1940, 46 of the shares theretofore standing *51 in the name of and belonging to C. W. Mack were transferred 22 shares to Mary Gail Koen, 22 shares to Charlotte Koen and 2 shares to Smith. Charlotte and Mary Gail were the daughters of E. B. Koen and nieces of Smith. Subsequently, on February 4, 1941, the certificate for the remaining 25 shares standing in the name of Mack was surrendered and the shares were reissued, 2 shares in the name of Mack, 8 shares in the name of E. B. Koen, 10 shares in the name of Jessie Gribbin and 5 shares in the name of Martha Furbee. Jessie Gribbin and Martha Furbee were cousins of Charlotte and Mary Gail Koen. Smith first knew of the issuance of the two shares in his name when he received the certificate from Koen, with the request that he endorse it in blank and return it to Koen. With the possible exception of the certificate for the two shares issued to Adams and the certificate for the eight shares issued to E. B. Koen, [1] all of the outstanding stock certificates were given by Koen to his daughters, Charlotte and Mary Gail, to have as their own property shortly after the certificates were issued. All of the certificates so received by Charlotte and Mary Gail had previously been endorsed in *52 blank by the individuals in whose name they had been issued, except the certificates issued in the name of Jessie Gribbin and Martha Furbee, and shortly after those certificates were issued Mary Gail, at the suggestion of her father, procured the endorsements in blank by Jessie Gribbin and Martha Furbee of these two certificates. From the receipt of the said stock certificates by Charlotte and Mary Gail Koen, as indicated, they have at all times had possession thereof as their own, and for most, if not all, of the time the certificates have been held in a safety deposit box standing in their joint names. Acting under his contract of July 19, 1940, with petitioner, Smith was successful in interesting Phillips Petroleum Company and Magnolia Petroleum Company, the operating companies on the Kansas properties, in taking steps to procure "secondary" production, and as a result thereof the income of petitioner from the properties was materially increased, and Smith, pursuant to his contract, was paid 50 per cent of such income in excess of $400 per month. The "secondary" production on the properties was obtained through the forcing of water into the wells, thereby bringing the oil to *53 points from which it could be recovered. Petitioner's total gross income, its gross income from mineral, oil and gas royalties, its total deductions allowable under section 23(a), and the amounts paid to Winston T. Smith for the years 1943 to 1949 were as follows: Gross Income from
Total Deductions
Amounts paid
Total Gross
mineral, oil or
allowable under
to
Income
gas royalties
Sec. 23(a)
Winston T. Smith
1943
$13,320.17
$13,033.49
$ 5,923.20
$ 4,166.18
1944
39,967.86
39,736.38
23,354.75
17,468.19
1945
45,256.56
43,702.63
22,765.24
19,451.31
1946
33,558.59
36,244.90
21,614.03
18,459.95
1947
33,143.44
31,933.44
15,716.81
13,566.72
1948
35,230.98
34,184.98
17,012.75
14,692.49
1949
30,909.24
29,355.43
14,790.60
12,277.71
At no time has Winston T. Smith ever been the owner of any stock in petitioner and at all times since the certificate which had been issued to him was delivered by Koen to his daughters, the two shares covered thereby have been the property of Charlotte and Mary Gail Koen. Smith has never at any time received any payment or distribution from petitioner by reason of the ownership by him of *54 any of petitioner's stock. In 1946, and with a view to the purchase of oil and gas interests therein, petitioner caused a geologist employed by it to make a survey of properties located in two Texas counties. The geologist made the survey as directed and on the basis thereof made recommendations to petitioner against the purchase of interests in the said properties, and petitioner, in 1946, relying upon his recommendations, abandoned the idea of making any such purchases. For the services so rendered, petitioner in 1946 paid the geologist $2,600. Through a corporate reorganization in 1941, petitioner acquired the assets of Arrow Investment Company. Arrow Investment Company in the course of its operations had dealt in corporate stocks. Among the assets received by petitioner in the reorganization were 100 shares of Jones & Laughlin Steel Company stock, 100 shares of Montgomery Ward & Company stock and 100 shares of Sears, Roebuck and Co. stock. These stocks were sold by petitioner in 1946 and on the sale petitioner sustained *55 a loss of $3,881.83. In its corporation income tax return for 1946 petitioner deducted the $2,600 paid to the above geologist as a payment made for professional services. It deducted the loss of $3,881.83 sustained in the sale of the above indicated stocks as an ordinary loss. In its corporation income tax return for 1947, petitioner deducted $587.03 as a loss sustained by it due to the abandonment in 1947 of an oil lease. Petitioner's interest in the said lease had been acquired in 1936 for $3,900. In his determination of income tax deficiency for 1946, the respondent disallowed the deduction of $2,600 which had been claimed by petitioner as a payment for professional services. Also, he determined that the loss upon the sale of the corporate stocks acquired from Arrow Investment Company was a capital loss, and not an ordinary loss, as claimed. In his determination for 1947, he disallowed the deduction of $587.03 which had been claimed as a loss resulting from the abandonment in 1947 of an oil lease in which petitioner had an interest. Opinion The respondent has determined that for the years 1943 through 1949 petitioner was a personal holding company within the meaning of *56 section 501 of the Internal Revenue Code of 1939, and subject to the personal holding company surtax imposed by section 500, which determination the petitioner contends was in error. Under section 501(a)(1), [2] a corporation is a personal holding company if at least 80 per cent of its gross income for the taxable year is personal holding company income as defined in section 502, and in section 502(h)[3] personal holding company income is defined to mean the gross income of the corporation, which consists of mineral, oil, or gas royalties, unless "the deduction allowable under section 23(a) (relating to expenses) other than compensation for personal services rendered by shareholders, constitute 15 per centum or more of the gross income." *57 Petitioner does not deny that 80 per cent or more of its gross income for each of the taxable years consisted of oil and gas royalties, but contends that more than 15 per cent of its gross income for each of the years herein was paid to Smith for his services under the contract of July 19, 1940, that these expenditures were "deductions allowable under section 23(a) (relating to expenses)," that Smith was not a shareholder of petitioner and as a consequence its gross income according to section 502(h) was not personal holding company income. Petitioner admits that if Smith was a shareholder within the meaning of section 502(h), its allowable section 23(a) deductions did not, for the purposes here, amount to 15 per cent of its gross income and it was a personal holding company, as respondent has determined. At the trial it was respondent's position that Smith, being a shareholder of record, the payments received by him from petitioner were for services rendered by a shareholder within the meaning of section 502(h), and were not to be taken into account as allowable deductions under section 23(a), for the purpose of determining whether or not the deductions relating to expenses which *58 were allowable constituted 15 per cent or more of petitioner's gross income. On brief, he now agrees with petitioner that the word shareholder as used in section 502(h) has reference to a real or actual owner of stock in the corporation and not to a mere nominee. The personal holding company issue is accordingly decided by our finding of fact that Smith at no time was the owner of any stock in petitioner. Suffice it to say that in making that finding, we have considered all of the evidence, including that on which the respondent relies, and are not in doubt that the finding is as shown by the evidence. We are also of the view that petitioner properly and correctly claimed deduction for 1946 of the $2,600 paid to the geologist for services rendered in the making of a survey and recommendations with respect to certain properties in two Texas counties in which petitioner was considering buying oil royalty interests. If petitioner had purchased the interests, or had continued with its plans with respect thereto, there would be a basis for respondent's view that the expenditures should have been capitalized and not expensed. To the contrary, however, petitioner, in the same year that *59 the survey and expenditures were made, abandoned any thought of purchasing interests in the properties. Such being the case, 1946 was the proper year of deduction. With respect to the loss of $3,881.83 sustained in 1946 upon the sale of corporate stocks, the respondent's determination is approved. The only basis suggested for the allowance of the loss as an ordinary loss, as petitioner claims, rather than a capital loss, as respondent has determined, is that the Arrow Investment Company, from which the stocks were acquired pursuant to a corporate reorganization, dealt in such stocks and that petitioner by its charter was authorized to deal in securities. The stocks in question were acquired by petitioner in 1941 and sold in 1946. At no time does it appear that it was a dealer in stocks or securities, or that it ever held any stock primarily for sale to customers in the course of its trade or business. There is no basis of record for allowance of the deduction as claimed. Petitioner's claim of deduction of $587.03 as a loss resulting from the abandonment in 1947 of an oil lease in which petitioner had an interest is denied for lack of proof. The facts show that petitioner acquired *60 its said interests in 1936, at a cost of $3,900. Its claim is that $587.03 represents the amount deductible in 1947, the year of abandonment. We have no evidence on the point beyond the testimony of petitioner's accountant, which testimony was so confused that it is impossible to determine therefrom that any part of petitioner's cost remained unrecovered in 1947 when the lease was abandoned. Decision will be entered under Rule 50. Footnotes
1. At the time of the trial, both Adams and Koen were dead and the whereabouts and state of the stock certificates standing in their names were not shown.↩
2. SEC. 501. DEFINITION OF PERSONAL HOLDING COMPANY. (a) General Rule. - For the purposes of this suchapter and chapter 1, the term "personal holding company" means any corporation if - (1) Gross Income Requirement. - At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 502↩; but if the corporation is a personal holding company with respect to any taxable year beginning after December 31, 1936, then, for each subsequent taxable year, the minimum percentage shall be 70 per centum in lieu of 80 per centum, until a taxable year during the whole of the last half of which the stock ownership required by paragraph (2) does not exist, or until the expiration of three consecutive taxable years in each of which less than 70 per centum of the gross income is personal holding company income; * * * 3. SEC. 502. PERSONAL HOLDING COMPANY INCOME. For the purposes of this subchapter the term "personal holding company income" means the portion of the gross income which consists of: * * * *
(h) Mineral, Oil, or Gas Royalties. - Mineral, oil, or gas royalties, unless (1) constituting 50 per centum or more of the gross income, and (2) the deductions allowable under section 23(a) (relating to expenses) other than compensation for personal services rendered by shareholders, constitute 15 per centum or more of the gross income.↩